Same Case. — On a Re-i-iearing.
The will should be maintained as a nuncupative testament by public act. The case of iSeghers v. Antheman. (1 Mart. N. S. 73,) is directly in point. That case was decided under the Code of 1808; but the law in relation to donations, mortis causa, was not altered, in this respect, by the Code of 1825. The language of the will shows that it was read to the testatrix in the presence of the witnesses. The notary, after stating that it was dictated in the presence of the witnesses, and written as dictated in their presence, adds, then (alors) I read the said acts to the said testatrix, who declared, &c. To what time does the word alors refer, if not to the period when the will was dictated. Can it be presumed that the witnesses had absented themselves ? Is the conclusion not irresistible that the witnesses were present when the will was read ? Where an expression is susceptible of two meanings, it should be understood in that sense which will give it effect. See 5 Toullier, No. 430, p. 408.
The testament states, that it was dictated in the presence of I he witnesses, written in their presence — then read to the testatrix — and then follows the clause reciting that it was done and passed in the presence of the witnesses. To conclude that the witnesses were not present, when the will was read to the testatrix, it must be inferred that they absented themselves between the time of writing the first part of the will, and the writing of the clause, “Done and passed, &c.for the rending is stated to have taken place between these periods. Which is the most reasonable conclusion — that the witnesses absented themselves during the reading of the will, or that they remained 1
In any event, the will is good as a testament by private act.
Simon, J.
We were induced to grant a re-hearing in this
case, from the doubt which we entertained, whether the word “alors” used by the notary in the closing of the will, and immediately following the words “écritde suite par moi, &c.,” and preceding the words “ jai lu le dit acte a la dite testatrice,” did not sufficiently indicate that the will had been read to the testatrix by the notary, in the presence of the witnesses. We thought, from the expression “ alors,” written between the sentence in which the notary declares that the will was dictated to him in *39 the presence of the witnesses, and that part in which he says that he read it to the testatrix, that it might perhaps be fairly inferred, that the dictating, writing, and reading of the will, had been done altogether in the presence of the witnesses; but we have been unable, however reluctant we may feel to annul a will for the want of a formality, which, at the first blush, appears to be of a trifling and unimportant nature, to come to a conclusion different from that contained in our first opinion. The law is imperative, that the mention of the reading of the will to the testatrix, in the presence of the witnesses, must be express ; and although the rule has been relaxed so far as to be now settled, that if the proof of the reading of a will to the testator, in the presence of the witnesses, is furnished by the testament itself, it is immaterial in what words that proof is furnished, still some words must be used, from which the fact may be inferred, that the formality was complied with, and such inference should be so conclusive, and so certain, as to leave no doubt, in the mind of the court, that when the will was read to the testator, the witnesses were present. In this case, it is, in our opinion, impossible to draw such an inference.
The case of Seghers v. Antheman, (1 Mart. N. S. 73,) relied on by the defendant’s counsel, does not seem to support him. In that case, the following sentence occurred at the close of the will: “ C’est ainsi que ce testament a été fait en presence des sieurs, &c., tons trois témoins, & c., et lecture faite de ce que dessus, la testatrice en presence des témoins nous a declaré, <fcc.” In that case, the question was not, whether, when the will was read, the witnesses were present, but whether, when it was so read to the witnesses, the testatrix was present, or, in other words, whether it was read to her ? In this case, on the contrary, the question consists in ascertaining from the expressions used in the will, whether the witnesses were in attendance when the will under consideration was read to the testatrix by the notary. It is clear that this will was read to the testatrix, who declared that she understood it, and approved it in all its contents ; but, as we have already said, this statement does not include the idea that the witnesses were there when it was so read, although she may have made the subsequent declarations in their presence; and the ex *40 pressions used in the said will, do not satisfy us, on this important requisite of the law.
It is contended, however, that the will is good as a private act, and that the case should be remanded to the lower court, in order to afford to the defendant, an opportunity of showing that a greater number of witnesses, than are mentioned in the. will, could not be had, the same having been made in the country. This, we think, cannot be done. There is no issue between the parties, on this point, and we cannot remand a case to be tried, de novo, on any other issue, than those presented by the record, and the pleadings therein contained. We are of opinion, however, that justice requires that the defendant’s legal right to show that the will in question is good as a private act, should be reserved, (Civ. Code, art. 1583,) and that the present judgment ought not to prejudice the validity of the will, if it can be established in any one of the other forms prescribed by law.
Our first judgment is, therefore, maintained, reserving to the defendant the right of showing, hereafter, that the testament here annulled as one made by public act, is valid, as a nuncupa-tive will by private act.